**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas W. Doran,<br><br>           Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>           Defendant. | No. CV-16-00334-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Thomas W. Doran's appeal from the Social Security Commissioner's (the "Commissioner's") partial denial of his application for disability insurance benefits and supplemental security income under the Social Security Act. Plaintiff argues that the administrative law judge ("ALJ") erred by: (1) finding Plaintiff's impairments do not meet Listing 1.04(A)'s criteria; (2) failing to allow a medical expert to testify during the administrative hearing; and (3) finding Plaintiff's testimony to be non-credible. The Court now rules on Plaintiff's appeal.

**I.     BACKGROUND**

   **A.     Procedural Background**

Plaintiff filed for disability insurance benefits on October 31, 2006, alleging disability as of January 25, 2006. He also filed a concurrent application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. In September 2011, an ALJ determined that Plaintiff was disabled as of December 2, 2009. The Appeals Council affirmed the ALJ's finding but remanded for reconsideration of certain evidence

relating to the time before December 2, 2009. Notably, Plaintiff sought a determination that he was disabled before December 31, 2008, the date on which he was last insured for disability benefits.[1] On remand, however, the ALJ determined that Plaintiff was not disabled before December 2, 2009. At issue here is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled before December 2, 2009.

### B.     Plaintiff's Background

Plaintiff was born on December 3, 1954. He has a high-school equivalent education ("GED") and two years of college. (Tr. 31–32).[2] Plaintiff served in the military from 1974 to 1981 (Tr. 238, 585). His subsequent employment included administrative, banking, and service work. (Tr. 31–32, 126–27, 148–49, 238, 260). The vocational expert classified Plaintiff's past relevant work as skilled and semi-skilled, ranging from sedentary to a medium exertional level. (Tr. 44–46).

### C.     Medical Background

Plaintiff claims that he suffers from an extensive list of impairments, including "degenerative disc disease of the cervical and lumbar spine, seizure disorder, posttraumatic stress disorder (PTSD), depression, and anxiety disorder with panic attacks." (Doc. 13 at 3). Plaintiff received extensive treatment for both his physical and mental impairments, which this Court summarized in its earlier Order. *See Doran v. Astrue*, No. CV-10-8155-PCT-LOA, 2011 WL 4032320, at *2–12 (D. Ariz. Sept. 12, 2011).

## II.    LEGAL STANDARD

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*,

---

[1] A disability insurance benefits claimant must establish disability prior to expiration of the claimant's insured status. *Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1996).

[2] Citations to "Tr." are to the certified administrative transcript of record. (Doc. 10).

881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, he is "under a disability." 42 U.S.C. § 423(a)(1)(E) (2012). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

*Id.* § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple

instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity ["RFC"] based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares his RFC "assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC and his "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must

consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529; SSR 06-3P, 71 Fed. Reg. 45593–97 (Aug. 9, 2006).

## C. The ALJ's Evaluation under the Five-Step Process

At step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date. (Tr. 607). At step two, the ALJ concluded that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, seizure disorder, posttraumatic stress disorder (PTSD), depression, and anxiety disorder with panic attacks." (Tr. 607–08). At step three, the ALJ determined that Plaintiff's mental and physical impairments did not meet or equal any of the listed impairments in the Social Security regulations. (Tr. 608–11).

Before moving on to step four, the ALJ conducted a RFC determination in light of Plaintiff's testimony and the objective medical evidence. (Tr. 611–22). The ALJ found that Plaintiff had the RFC, during the period of January 25, 2006 to December 1, 2009, to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [he] could not climb ladders, ropes, or scaffolds. He could occasionally crawl. He could occasionally reach overhead, bilaterally. He should avoid all use of hazardous machinery, which does not include motor vehicles, and all exposure to unprotected heights, open flames, and open bodies of water. [He] was limited to work which was simple and routine in task, with requiring only occasional decision making and occasional changes in the work setting. [He] was limited to occasional interaction with public and co-workers, and only occasional and superficial interaction with supervisors.

(Tr. 611–12). At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 622). Finally, the ALJ concluded at step five that, based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform a significant number of jobs existing in the national economy. (Tr. 622–23). Consequently, the ALJ found that Plaintiff was not disabled under the Social Security Act during the period beginning on

January 25, 2006 and ending on December 1, 2009." (Tr. 623).

**III. ANALYSIS**

Plaintiff makes three arguments for why the Court should reverse the ALJ's decision. Specifically, Plaintiff asserts that the ALJ committed the following errors: (1) failing to provide a full evaluation as to whether Plaintiff's cervical spine impairment met or equaled Social Security listed impairments; (2) failing to obtain medical expert testimony during step three; and (3) rejecting Plaintiff's symptom testimony without clear and convincing reasons for doing so. (Doc. 13). The Court will now address each argument in turn.

**A. Whether the ALJ Properly Considered Listing 1.04(A)'s Criteria**

Plaintiff argues that at step three of the sequential evaluation process, the ALJ erred by failing to find Plaintiff's cervical spine impairment met or equaled Listing 1.04(A), which covers disorders of the spine. (*Id.* at 21–25).

**1. Legal Standard**

At step three, the ALJ must assess whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to the federal regulations. 20 C.F.R. 404, subpart P, Appendix 1. Conditions set forth in the Listing of Impairments ("Listings") are considered to be so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester*, 81 F.3d at 828. The claimant bears the burden of establishing a prima facie case of disability under the Listings. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("[Claimant] had to establish that he met or equaled each of the following characteristics of a listing."). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citations omitted).

Listing 1.04 requires a finding of disability for a claimant who: (1) has a

"[d]isorder[] of the spine," such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture," (2) that results in "compromise of a nerve root . . . or the spinal cord," and (3) which is accompanied by the additional requirements set forth under subsections 1.04(A), 1.04(B), or 1.04(C). 20 C.F.R. 404, subpart P, Appendix 1, § 1.04. Section 1.04(A), the subsection at issue here, requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* § 1.04(A). Thus, four elements are required to meet Listing 1.04(A), plus an additional element if the lower back is involved: (1) a disorder of the spine as specified; (2) evidence of nerve root compromise; (3) limitation of motion of the spine; (4) motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss; and, in cases of lower back involvement, (5) a positive straight-leg raising test. *Id.* In other words, evidence of *both* motor loss—i.e., muscle weakness or atrophy associated therewith—*and* sensory or reflex loss, in addition to limitation of motion of the spine, is required. Furthermore, each Listing 1.04(A) element must be simultaneously present to meet the listing criteria. *See* SSAR 15-1(4), 80 Fed. Reg. 57418, 57420 (Sept. 23, 2015) ("Listing 1.04A uses the conjunction 'and' when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination."). Finally, the claimant must establish that the impairment satisfies the 12-month durational requirement. *See id.* ("[T]he simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4))).

### 2. Analysis

The ALJ summarized the medical records and noted:

> [T]here are no findings based on diagnostic, clinical, and/or objective evaluations, including reports of laboratory test and

> diagnostics imaging, consistent with the level of severity that meets the criteria under the Listings. As well, no examining or treatment physician or medical provider reported findings since the alleged onset date that meet the criteria under the Listings.

(Tr. 608–09). While noting that *some* elements of Listing 1.04(A) might have been met at times between 2005 and 2009, the ALJ found that "there is no consistent evidence of limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." (Tr. 609). To bolster this finding, the ALJ cited to a February 2007 report by Dr. Keith Cunningham, indicating "normal range of motion throughout, normal gait, normal coordination, motor and sensory testing normal throughout, ambulation normal, and negative straight leg raise, bilaterally." (Tr. 609, 261).

Plaintiff contends "[t]here is ample evidence in the record [showing he met] or equal[ed] all elements of Listing 1.04(A) with regard to [his] cervical spine degenerative disc disease." (Doc. 13 at 22). Thus, Plaintiff argues that the ALJ failed to adequately consider the listing criteria and record. (*Id.*). Plaintiff contends that the record reflects the Listing 1.04(A) elements, including: (1) neuroanatomic distribution of pain, as diagnosed by Nurse Practitioner Debra Hiller in June 2008, (Tr. 537); (2) limitation of motion, as diagnosed by Dr. William Lawrence in May 2007, (Tr. 329–30); (3) motor loss and sensory or reflex loss in the upper extremities, as recognized by Dr. Lawrence in May 2007, (Tr. 329–30), Nurse Hiller in June 2008, (Tr. 537), and Dr. Samuel Foote in August 2006, (Tr. 349). (Doc. 13 at 22). However, Plaintiff fails to cite to any single physician's report—or even *reports* taking place within the same 12-month-period—indicating that Plaintiff met or equaled all elements of Listing 1.04(A) simultaneously and satisfying Listing 1.04(A)'s durational requirement.

While the ALJ acknowledged the existence of much of the evidence Plaintiff cites to, the ALJ recognized that "abnormal radicular findings have not been persistent on exams." (Tr. 610). Plaintiff also failed to meet his burden of providing evidence indicating he met all of the Listing 1.04(A) criteria, including the durational and

- 9 -

simultaneity requirements. Even to the extent that Plaintiff sought the ALJ to infer the simultaneity of the Listing 1.04(A) criteria given the independent evidence, the ALJ found that Dr. Cunningham's report supported the conclusion that Plaintiff did not meet the Listing 1.04(A) criteria. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). Thus, based on Dr. Cunningham's report, there was substantial evidence to support the ALJ's conclusion that Plaintiff's cervical spine condition was not limiting in a way that satisfied all of the requirements of Listing 1.04(A).[3]

Plaintiff also contends that the ALJ erred by considering whether Plaintiff met the criteria for Listings 1.04(B) and 1.04(C), despite Plaintiff only arguing that he met Listing 1.04(A). (Doc. 13 at 23). Plaintiff appears to be concerned that the ALJ erroneously believed that Plaintiff must meet "all three [Listing 1.04] A, B, and C criteria to meet or equal . . . Listing [1.04]." (*Id.*). However, the ALJ clearly considered Listings 1.04(A), (B), and (C) separately. In reciting Plaintiff's burden, the ALJ recognized that Plaintiff "must prove a disorder of the spine . . . resulting in compromise of a nerve root . . . or the spinal cord *with at least one of these additional criteria*: A . . . OR B . . . OR C . . . ." (Tr. 609). The ALJ then clearly indicated the parts of his findings where he was considering the criteria under Listing 1.04(A), 1.04(B), or 1.04(C). (*See* Tr. 609–611). Plaintiff also claims the ALJ erred simply by considering whether Plaintiff met either Listing 1.04(B) or 1.04(C). (*See* Doc. 15 at 6 ("[Plaintiff] does not request a

---

[3] Plaintiff also argues that the ALJ erred because his finding was inconsistent with this Court's earlier Order, which stated there was "evidence in the record that showed that Plaintiff had spinal cord impingement and moderately severe neural foraminal encroachment; cervical radiculopathy; limited rotation of the cervical spine; weakness of the left bicep, reduced grip strength, absent left biceps reflex, and decreased left biceps weakness." (Doc. 13 at 22–23) (quoting *Doran*, 2011 WL 4032320, at *12). However, Plaintiff's argument is misguided. This Court never made a determination that Plaintiff met or equaled the criteria in Listing 1.04(A). While the Court recognizes that evidence of certain Listing 1.04(A) criteria is present in the record, Plaintiff was required to show the criteria were met simultaneously and within the durational requirement. It is the ALJ's—not this Court's—prerogative to make the ultimate factual determination. *See Molina*, 674 F.3d at 1111.

survey of all listed criteria, only an adequate review of the particular listing relevant to his case, section 1.04(A).")). However, the Court fails to recognize how the ALJ's robust review of the record and Listing 1.04 criteria amounted to any error.

Given the above medical findings in the record, there was substantial evidence upon which the ALJ could draw his conclusion that Plaintiff's impairments did not meet or equal the requirements of Listing 1.04(A). Accordingly, the ALJ did not err in finding that Plaintiff did not meet Listing 1.04(A) at step three.

### B. Whether the ALJ Required a Medical Expert's Testimony

Plaintiff next contends that the ALJ erred at step three by failing to obtain the testimony of a medical expert regarding whether Plaintiff's cervical spine impairment met or equaled the criteria of Listing 1.04(A). (Doc. 13 at 24–25). Plaintiff claims that Social Security Ruling 83-20 required the ALJ to seek testimony from a medical expert because the ALJ lacked an informed judgment on Plaintiff's disability onset date. (*Id.*). Thus, Plaintiff argues, the ALJ erred by denying Plaintiff's request for the ALJ to call a medical expert to testify. (*Id.*).

#### 1. Legal Standard

Social Security Ruling 83-20 provides guidance regarding the onset date of disability. In *DeLorme v. Sullivan*, the Ninth Circuit Court of Appeals (the "Ninth Circuit") recognized that "[i]n the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, [Social Security Ruling] 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." 924 F.2d 841, 848 (9th Cir. 1991). Thus, an ALJ commits legal error by failing to call upon a medical expert to assist in determining the onset date of disability when that date is not otherwise established in the record. The purpose of this requirement is to assist the ALJ in determining the onset date of disability when a claimant suffers from a disabling impairment for an extended period of time before going to a doctor. *See* SSR 83-20, at *6–10 (Cum. Ed. 1983).

### 2. Analysis

Here, Plaintiff's alleged onset date of disability of January 25, 2006 does not pre-date medical examination reports that are part of the record. (*See, e.g.*, Tr. 496–518 (medical examination reports from December 2003 to January 2006)). Thus, a medical expert was unnecessary because the ALJ could determine the onset date based on the clear medical evidence in the record. *Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Because the dispute is not over how long Plaintiff suffered from the cervical spine impairment before being diagnosed but, rather, at what point after being diagnosed his impairment worsened to such a degree that it became disabling, the ALJ did not err by failing to call a medical expert.

### C. Whether the ALJ Properly Discredited Plaintiff's Symptom Testimony

Plaintiff finally argues that the ALJ erred when he determined that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was "not fully credible." (Tr. 613).

### 1. Legal Standard

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick*, 157 F.3d at 722. If credibility is critical, the ALJ must make an explicit credibility finding. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of his symptoms, the ALJ must engage in a two-step analysis. *Molina*, 674 F.3d at 1112. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely

because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283–84); *Lingenfelter*, 504 F.3d at 1036.

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

**2.    Analysis**

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 613). The ALJ discredited Plaintiff's subjective testimony because: (1) Plaintiff's overall treatment history—including the effectiveness of Plaintiff's prescribed medication and his cooperation with physicians—was inconsistent with his testimony; (2) the objective medical evidence did not support Plaintiff's testimony; and (3) Plaintiff's daily activities undermined the alleged severity of his complaints. (Tr. 611–18). The ALJ also specified the portions of Plaintiff's testimony he found lacking in credibility, including Plaintiff's testimony regarding his pain, panic attacks, mental symptoms, and physical symptoms. (Tr. 612–13).

### a. Overall Treatment History

The ALJ initially discredited Plaintiff's complaints of disabling symptoms due to inconsistencies between Plaintiff's testimony and Plaintiff's statements and conduct recorded during his overall treatment history. The ALJ partially supported his adverse credibility determination by finding that Plaintiff "was not putting forth maximal effort or was not fully cooperating" during his testing and treatment. (*Id.* at 615); *see Thomas*, 278 F.3d at 959 (recognizing that a claimant's failure to cooperate with medical tests or give consistent effort during evaluations lends support to an adverse credibility finding); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

For example, the ALJ cited to Dr. Charles House's psychological evaluation notes indicating a suspicion that Plaintiff might have exaggerated or fabricated information regarding his alleged seizures. (Tr. 615, 285). However, Dr. House's suspicion was weak as he postulated that his unfamiliarity with Plaintiff's condition could also be due to a specific type of "seizure disorder" or Plaintiff's "problems with anger." (Tr. 285). The other evidence of noncooperation the ALJ cited to was a note by a pharmacist, in which she suspected Plaintiff was "not in compliance with formulary guidelines/criteria" and cancelled Plaintiff's prescription. (Tr. 615, 374–75). Although this pharmacist reviewed pertinent parts of Plaintiff's medical record in making her observation, treating doctors appeared to override this cancellation by prescribing antipsychotic medication a year later. (*See* Tr. 1125–29). Additionally, while Defendant cites to additional evidence in the record of physicians questioning the accuracy of Plaintiff's statements during exams, (*See* Doc. 14 at 19; Tr. 1146–48), the ALJ never cited to these instances, *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014) (stating that it is the "ALJ's responsibility to provide a discussion of the evidence" upon which he relied (quotations omitted)). Yet, even if the ALJ did err in basing his credibility determination on whether Plaintiff fully cooperated with treating physicians, it is harmless error as the ALJ provided other clear and convincing reasons for discrediting Plaintiff's testimony, as discussed below. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162

(9th Cir. 2008) (recognizing harmless error where "two of the ALJ's [four] reasons supporting his adverse credibility finding [were] invalid").

The ALJ also recognized that "the record shows the medications were effective in improving and/or managing the claimant's physical and mental symptoms." *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). For example, Plaintiff indicated to physicians that he was able to either manage or improve the conditions of both his mental and physical impairments due to medication. (Tr. at 614). Although Plaintiff argues that the ALJ cited to ambiguous statements by Plaintiff, such as "doing well," the ALJ also cited to more objective indications of the medication's effectiveness, such as Plaintiff rating his pain level at "0" in July 2009. (*Id.*). Thus, the effectiveness of Plaintiff's prescribed medications is a clear and convincing reason to discount Plaintiff's testimony.

The ALJ next recognized that Plaintiff "missed many scheduled appointments and had significant gaps in treatment dates." (Tr. at 614); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[U]nexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony."). For example, Plaintiff missed numerous scheduled appointments with various doctors and proffered excuses when a triage nurse suggested treatment. (Tr. 614). Plaintiff argues that the ALJ was obligated to confront and seek an explanation from Plaintiff regarding his behavior. In support, Plaintiff cites *Singh v. Gonzales*, an appeal of an immigration judge's denial of asylum. 403 F.3d 1081 (9th Cir. 2005). Even if this case stands for the proposition Plaintiff claims, Plaintiff cites to no authority indicating this case would apply in the Social Security context. To the contrary, where substantial evidence supports an ALJ's credibility determination, the Ninth Circuit has refused a claimant the chance to explain her inconsistent statements or conduct which led to an adverse credibility determination. *See Tonapetyan*, 242 F.3d at 1148. Thus, Plaintiff's missed appointments are a clear and convincing reason to discount Plaintiff's testimony about the severity of

his symptoms.

### b. Objective Medical Evidence

The ALJ also found that medical evidence of record contradicted Plaintiff's testimony. (Tr. 614–18). Plaintiff testified that his physical symptoms included such severe neck and arm pain that holding a cup was difficult, and his pain forced him to spend each day lying down for four-to-five hours off and on. (Tr. 612–13, 649–50, 652). With regard to his mental symptoms, Plaintiff testified that he suffered from auditory hallucinations, poor memory, and an inability to be friendly. (Tr. 612, 646–48).

Objective medical evidence is a relevant consideration regarding a claimant's credibility. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the [ALJ] can consider in his credibility analysis."); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Because an ALJ cannot simply state that a claimant's testimony is contradicted by the record, *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination."), the ALJ must specifically identify which "testimony is not credible and what evidence suggests the complaints are not credible," *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Greger*, 464 F.3d at 972.

Here, the ALJ found that both Plaintiff's physical and mental symptom testimony was contradicted by objective evidence in the medical record. The ALJ concluded that Plaintiff's testimony as to the severity of Plaintiff's neck and arm pain was contradicted by an August 2006 examination report indicating "no focal motor weakness" and intact motor strength in all four extremities. (Tr. 615). Plaintiff's physical symptom testimony was further undermined by Dr. Cunningham's February 2007 examination report, indicating Plaintiff showed "no muscle spasm or point tenderness" in his neck or back. (Tr. 617). These medical findings, among others cited by the ALJ, contradict Plaintiff's allegations that his physical symptoms were completely debilitating. The ALJ also

concluded that mental health assessments undermined Plaintiff's testimony regarding his debilitating mental health symptoms. (*Id.*). While the ALJ recognized some mental health symptoms, the record indicated that Plaintiff had "denied all auditory or visual hallucination or delusions" and was "fully oriented" during an August 2007 exam. (Tr. 617, 1136–42). Subsequent medical examination reports also contradicted Plaintiff's mental health symptom testimony. (Tr. 617–18 (recognizing that an October 2009 mental status exam "indicated the claimant with good mood, pleasant, cooperative, alert and oriented, no delusions, no hallucinations, good insight and judgment, cognition grossly intact, and no suicidal/homicidal ideations"), 1109–10).

Plaintiff argues that the ALJ erred by failing to provide clear findings and, thus, accuses the ALJ of "stepp[ing] out of his role as an administrative adjudicator" and into the role of "a medical professional." (*See* Doc. 13 at 14–16). This is not the case. Here, while the ALJ did not restate Plaintiff's symptom testimony before discussing contradictions within the record, it was clear which testimony the ALJ was finding not credible. *See Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." (quotations omitted)). Thus, the inconsistencies between Plaintiff's testimony and the objective medical record are a clear and convincing reason to discount Plaintiff's testimony.

### c. Daily Activities

The ALJ finally found that Plaintiff's activities of daily living contradicted the level of impairment he claimed. (Tr. 613–14). The ALJ noted Plaintiff's daily activities, as he reported, include preparing simple meals, completing household chores, caring for his pets, shopping for groceries, and maintaining his personal finances. (Tr. 613). Additionally, Plaintiff occasionally uses public transportation or takes a taxi. (*Id.*). Plaintiff also makes his own jewelry, watches television, and listens to the radio. (*Id.*).

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports

participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1112–13 (citations and quotations omitted). Here, even though Plaintiff stated that he had difficulty functioning, the ALJ properly discounted the credibility of Plaintiff's subjective symptom testimony to the extent Plaintiff's daily activities were inconsistent with an inability to work in any capacity. *See, e.g.*, *id.* at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[,] [e]ven where those activities suggest some difficulty functioning . . . ." (citations omitted)); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citations omitted)). By way of example, Plaintiff testified that he had disabling difficulties with memory and concentration. (*See* Tr. 612, 646–48). Yet, the ALJ recognized that Plaintiff was able to pay bills, count change, handle a savings account, and use a checkbook and money orders. (Tr. 613, 177). To the extent that Plaintiff argues that other activities, such as "lying down [for] 4–5 hours off and on," (Tr. 613), occupied a more substantial part of Plaintiff's day than the ALJ concluded, the Court declines to second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857. Thus, Plaintiff's daily activities are a clear and convincing reason to discount Plaintiff's symptom testimony.

In sum, the ALJ provided several clear and convincing reasons supported by substantial evidence for finding Plaintiff's physical and mental symptom testimony less than fully credible. As such, the ALJ did not err in discounting Plaintiff's credibility.

### III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk of Court shall enter judgment accordingly.[4]

Dated this 8th day of November, 2016.

*James A. Teilborg*
Senior United States District Judge

---

[4] To the extent a mandate is required, the judgment shall serve as the mandate.